UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE MARIE LANDRUM,
on behalf of L.M.P.,

    Plaintiff,                                                                      Civil Action No. 17-CV-11036

vs.                                                                                  HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

        This matter is presently before the Court on cross motions for summary judgment [docket entries 14 and 15]. Pursuant to E.D. Mich. 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall deny plaintiff's motion and grant defendant's motion.

        Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying the application she filed on behalf of her minor daughter, "L.M.P.," for Supplemental Security Income ("SSI") benefits. An Administrative Law Judge ("ALJ") held a hearing in September 2015 (Tr. 14-38) and issued a decision denying benefits the same month (Tr. 78-93). This became defendant's final decision in February 2017 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

        Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305

U.S. 197, 229 (1938). In making this determination the Court does not review the record de novo, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence may support a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

At the time of the ALJ's decision, L.M.P. was ten years and ten months old and she was in the fifth grade in school (Tr. 18, 84). Plaintiff claims that L.M.P. has been disabled since March 15, 2012, due to a learning disability (Tr. 81, 248). The ALJ found that L.M.P.'s learning disability is a severe impairment (Tr. 84), but that she is not disabled under the Social Security Act because this impairment is not severe enough to meet or equal a listed impairment, as required by 20 C.F.R. § 416.924(d) (stating that for children seeking SSI benefits, "[y]our impairment(s) must meet, medically equal, or functionally equal the listings.").

Having carefully reviewed the administrative record, the parties' briefs, and the applicable law, the Court concludes that the ALJ's decision in this matter is supported by substantial evidence. While L.M.P. clearly has a learning disability that affects her ability to read, the ALJ reasonably concluded that this impairment is not sufficiently severe to meet or equal any of the listings.

There is no childhood listing that covers learning disabilities specifically. Nonetheless, a child with a learning disability qualifies as disabled if she has "marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C). Under 20 C.F.R. § 416.926a(b)(1), the extent of a child's functional limitations is determined by assessing her functioning in the following six "domains": (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting

and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being.

To be deemed disabled, the child must have a "marked" limitation in at least two of these domains or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(a). The regulations define the terms "marked" and "extreme" limitation as follows:

> (2) Marked limitation.
>
> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.[1]

---

[1] Paragraph (e)(4) of this regulation explains how test scores are weighed in assessing a child's limitations:

> (4) How we will consider your test scores.
>
> (i) As indicated in § 416.924a(a)(1)(ii), we will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a "marked" or an "extreme" limitation in a domain.
>
> (ii) We will consider your test scores together with the other information we have about your functioning, including reports of classroom performance and the observations of school personnel and others.
>
> (A) We may find that you have a "marked" or "extreme" limitation when you have a test score that is slightly higher than the level provided in paragraph (e)(2) or (e)(3) of this section, if other information in your case record shows that your functioning in

3

* * *

>(3) Extreme limitation.

>(i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e).

In the present case, the ALJ found that L.M.P. has "less than marked limitation" in the first domain (acquiring and using information) and no limitation in the other domains (Tr. 88-93). Plaintiff appears to concede that the only domain in which L.M.P. is limited is the first. She does not challenge the ALJ's finding that L.M.P. has no limitation in domains two through six.

---

> day-to-day activities is seriously or very seriously limited because of your impairment(s). For example, you may have IQ scores above the level in paragraph (e)(2), but other evidence shows that your impairment(s) causes you to function in school, home, and the community far below your expected level of functioning based on this score.

> (B) On the other hand, we may find that you do not have a "marked" or "extreme" limitation, even if your test scores are at the level provided in paragraph (e)(2) or (e)(3) of this section, if other information in your case record shows that your functioning in day-to-day activities is not seriously or very seriously limited by your impairment(s). For example, you may have a valid IQ score below the level in paragraph (e)(2), but other evidence shows that you have learned to drive a car, shop independently, and read books near your expected grade level. . . .

4

Therefore, the narrow issue before the Court is whether substantial evidence supports the ALJ's finding that the degree of L.M.P.'s limitation in this domain is "less than marked." In fact, as L.M.P. is limited in only one domain, to prove she is disabled plaintiff must show that the limitation in this domain is extreme. *See* 20 C.F.R. § 416.926a(a).

The following regulation explains what is meant by a child's ability to acquire and use information:

> (g) Acquiring and using information. In this domain, we consider how well you acquire or learn information, and how well you use the information you have learned.
>
> \* \* \*
>
> (2) Age group descriptors—
>
> \* \* \*
>
> (iv) School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.
>
> \* \* \*
>
> (3) Examples of limited functioning in acquiring and using information. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in

your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.

(ii) You cannot rhyme words or the sounds in words.

(iii) You have difficulty recalling important things you learned in school yesterday.

(iv) You have difficulty solving mathematics questions or computing arithmetic answers.

(v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a.

After summarizing the evidence, the ALJ gave the following explanation for finding that plaintiff's limitation in the domain at issue is "less than marked":

> <u>The claimant has less than marked limitation in acquiring and using information</u>. The claimant has been assessed with a specific learning disability in basic reading skills and reading fluency. She receives special services but is not assigned to a self-contained learning disabled classroom. Her grade in ELA improved from a "C" to a "B" in the 2nd quarter of the 2014-2015 school year and her reading improved from the 5th to the 25th percentile on the Fall 2014 NWEA. Although her math grade went down from a "B" to a "C" that same quarter, her mother felt it was because of the amount of reading required (Exhibits 4F-6F). At the end of the 4th grade, her reading level was early 3rd grade and her reading fluency was mid-2nd grade. Although the claimant's resource room teacher found significant problems in understanding school and content vocabulary and expressing ideas in written form, she noted the degree of problems depended on the subject and/or the material. Further, problems with comprehending and doing math problems were noted only when

6

> reading was necessary. In addition, she noted that the claimant had excellent "school skills" (Exhibit 13E). The claimant does have a limitation in this domain, but that limitation does not "seriously interfere" with the claimant's functioning in the activities relevant to this area; therefore, a "less than marked" rating is appropriate.

(Tr. 89).

As the above-quoted regulation makes clear, the inquiry in this domain is whether the claimant can do such things as "read[ing], writ[ing], and do[ing] math, and discuss[ing] history and science"; reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions"; reading street signs, telling time, and making change"; and using language "to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others." 20 C.F.R. § 416.926a(2)(iv). The evidence in this matter simply does not show that L.M.P.'s learning disability seriously interferes with her ability to do such things. While L.M.P. clearly has difficulty with some subjects in school and is reading below grade level, the record nonetheless supports the ALJ's finding that she is not markedly impaired in this domain.

To begin, the ALJ's decision is supported by the opinion of Dr. Khademian, M.D., a child and adolescent psychiatrist, who reviewed L.M.P.'s school records and test scores for the Disability Determination Service through July 2013 and concluded that she has a less than marked limitation in acquiring and using information (Tr. 71-76). Specifically as to this issue, Dr. Khademian noted:

> Recent school eval. indicates average cognitive ability (WJ; Cognitive=96) and per WIAT, below average reading skills (SS; 80-82), consistent with LD (3378). Child requires attending resource room 5 hrs/week. Otherwise is in regular ed program, is 2nd grader,

and is functioning at grade level (Teacher's report). LTM.

(Tr. 74). There is no other professional opinion, psychiatric or otherwise, in this record. The ALJ is entitled to rely on an expert's opinion such as this.

The referenced "teacher's report," dated May 23, 2013, indicates that L.M.P. received "special ed. services" five times per week, but that she had either "no problem" or only "[a] slight problem" in all areas relating to acquiring and using information (Tr. 259-60). The teacher commented that L.M.P. "understands and comprehends as most other 2nd grade students do" (Tr. 260).[2]

In August 2013 a school official reported that L.M.P. "had been struggling with reading" but that "[s]he is now at grade level in reading and also math and language usage" (Tr. 338). This report noted that L.M.P. has a learning disability "in reading only" and that she was "[r]eceiving resource room services for reading 5 hrs. per week" (Tr. 337).

Individualized Education Programs devised in March 2014 and March 2015 noted L.M.P.'s learning disability in reading (Tr. 339, 364) and directed that she be provided with the following modifications and support: adjustment of written assignments, modification of assignment length, provisions for breaking large assignments into smaller steps and for retaking reading tests if her grade is lower than 60%, and allowing her to take reading tests and quizzes in the resource room (Tr. 343, 366).

---

[2] When tested by a school psychologist one year earlier, in February 2012, L.M.P. was found to have average intellectual ability (including in areas of verbal ability, thinking ability, and cognitive efficiency) (Tr. 272). In achievement testing, she scored below average in reading and average in written expression and mathematics (*id.*). Testing of L.M.P.'s reading in the winter of 2013 placed her in the 26th percentile, a 17 point improvement over the fall of 2012 (Tr. 275).

8

In the first two quarters of the 2014-2015 school year, L.M.P. earned C's and B's in reading, writing, and language (Tr. 351). In the spring of 2014 she tested in the 5th percentile in reading (Tr. 352), but in the fall of 2014 she tested in the 25th percentile (Tr. 375).

In April 2015, L.M.P.'s special education teacher, Alexandra Balog, indicated on a questionnaire that she worked with L.M.P. for one hour per day to assist her with reading, and that L.M.P. has a "serious problem" reading and comprehending, and an obvious/serious/very serious problem, depending on the subject, in understanding vocabulary and expressing ideas in written form (Tr. 309). She also indicated that L.M.P. has no problem, or a slight problem, in comprehending oral instructions, understanding and participating in class discussions, providing organized oral explanations and descriptions, learning new material, recalling and applying previously learned material, and applying problem-solving skills (Tr. 310). Ms. Balog commented:

> [L.M.P.] has excellent "school skills" and always shows strong effort and work ethic. However, she struggles with reading, which has a strong impact on all academic subjects. Her specific learning disability in the areas of basic reading skills and reading fluency seriously impede her ability to be successful at grade level tasks. Based on her NWEA test, her reading level is early 3rd grade and, based on assessments conducted in Resource Room, [her] reading fluency level is mid-2nd grade.

(Tr. 310).

The Court concludes that the ALJ's decision in this matter is supported by substantial evidence. While L.M.P. clearly has a learning disability and is reading below grade level, the evidence simply does not show that she is markedly limited – to say nothing of extremely limited – in her ability to acquire and use information. There is scant evidence to suggest that L.M.P. has limitations of the sort noted in 20 C.F.R. § 416.926a(g)(3) as examples of an impaired ability to acquire and use information. Nor has plaintiff identified standardized test scores assessing L.M.P.'s

9

functioning in this domain that are more than two standard deviations below the mean. *See* 20 C.F.R. § 416.926a(e). Rather, the evidence demonstrates that L.M.P. has struggled with reading and has therefore needed, and received, additional support in this area. However, despite this learning disability, overall she is an average student who is doing well in school. This is plainly not a case of a disabled child, i.e., one with marked and severe functional limitations. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.

Dated: December 11, 2017　　　　　　　　s/Bernard A. Friedman
　　　　Detroit, Michigan　　　　　　　　　BERNARD A. FRIEDMAN
　　　　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 11, 2017.

　　　　　　　　　　　　　　　　　　　　s/Johnetta M. Curry-Williams
　　　　　　　　　　　　　　　　　　　　Case Manager